## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALPINE ATLANTIC ASSET
MANAGEMENT AG, a foreign business,

        Plaintiff,

        v.                         Case No.  07-2595-JWL

ANDREW COMSTOCK,

        Defendant.
_____

## MEMORANDUM AND ORDER

Plaintiff Alpine Atlantic Asset Management AG is a Swiss asset management firm. Defendant Andrew Comstock formerly worked for Alpine as a consultant.  This lawsuit arises out of events surrounding and following his resignation in which Mr. Comstock and others established Everest Asset Management, AG, a Zurich company that is now one of Alpine's competitors.  Alpine asserts several claims against Mr. Comstock for tortious interference, conversion, misappropriation of trade secrets, breach of contract, unjust enrichment, and breach of fiduciary duty, as well as similar claims under the Swiss Code of Obligations.  This matter comes before the court on Defendant Andrew Comstock's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Improper Venue and Failure to State a Claim (doc. #10).[1]  For the reasons explained below, defendant Comstock's motion to

---

[1] Also before the court is Mr. Comstock's motion for a hearing on the motion to dismiss (doc. #54).  This motion is denied because the court does not believe that oral argument would be of material assistance in resolving the motion to dismiss.

dismiss for lack of subject matter jurisdiction is denied, his motion to dismiss for improper venue is granted, and his motion to dismiss for failure to state a claim is denied as moot.

## FACTUAL BACKGROUND

According to the allegations in plaintiff's complaint, Alpine is a foreign corporation with its principal place of business in Zurich, Switzerland.  It is in the business of international asset management, and offers a broad range of services for institutional and individual clients, focusing on the independent management of investment portfolios.  From time to time, Alpine engages consultants to perform services relating to its investments, clients, and customers.  In 2004, Mr. Comstock became a consultant for Alpine as per the terms of a consulting agreement.  The agreement required Mr. Comstock to provide certain consulting services for the sole benefit of Alpine during the term of the agreement.  Those services involved client relationships and investment decisions.  In addition, in connection with the agreement Mr. Comstock was designated as a trading officer for Alpine in certain limited circumstances, which gave him the authority to give certain trading instructions and directives concerning clients' investments with Haywood Securities[2] and other institutions, but not to authorize the removal of money out of Alpine's or Alpine's clients' accounts. During the term of the agreement, Mr. Comstock routinely performed consulting services from his personal residence in Prairie Village, Kansas.

---

[2] Haywood Securities is a Canadian investment dealer with which Alpine has a well established business relationship.  Haywood holds certain accounts for Alpine.

In or about April of 2006, Erwin Speckert, a former manager of Alpine who resides in Switzerland, attempted to purchase Alpine by seeking to buy the ownership position of the majority shareholder.  This attempt was unsuccessful.  Unbeknownst to Alpine, soon thereafter in or about May of 2006, Mr. Comstock and others, including Mr. Speckert, began to execute a scheme to defraud Alpine of its money, assets, clients, capital, goodwill, standing in the international investment industry, and future business opportunities.  At that time, Mr. Comstock's consulting agreement with Alpine was still in force.  The scheme was memorialized in an email exchange dated May 1, 2006, among Mr. Speckert, Tony Moore, Herbert Towning, and Mr. Comstock.  Alpine's complaint refers to these four individuals, along with Sylvia Hannes and Livia Floria, as "co-conspirators" who created and incorporated another entity, Everest Asset Management, AG, a Zurich company, to compete with Alpine; to unlawfully seize Alpine's assets, goodwill, and standing in the international investment industry; and to solicit Alpine's existing customers.  Ms. Hannes and Ms. Floria were both previously employed by Alpine and are now employed by Everest.

On July 28, 2006, Mr. Comstock tendered his notice terminating his consulting agreement with Alpine effective August 31, 2006.  Under the terms of the agreement, Mr. Comstock was to continue to perform his obligations under the agreement for a one-month notice period.  And, Mr. Comstock stated in his notice as follows: "I fully intend to provide Alpine Atlantic with the same high level of professional services I have delivered in the past."  During the one-month notice period, Mr. Comstock indicated that he was returning to his residence in Kansas.  Mr. Comstock's termination of the consulting agreement also

terminated his authority to be a trading officer of Alpine concerning Alpine's accounts, including accounts with Haywood Securities.

Alpine alleges that on or about December 4, 2006, Mr. Comstock drafted and signed a fax cover sheet on Alpine letterhead and stationery instructing Haywood to "close the account of Alpine Atlantic Asset Management" and directing Haywood that "[a]ll cash and securities should be transferred to the new account in the name of: Everest Asset Management AG . . . immediately upon receipt of this fax." On the face of the fax, Mr. Comstock falsely represented himself as still being a consultant engaged with and under a mandate with Alpine, and falsely implied that he had authority to give and direct trading and securities instructions to Haywood on behalf of Alpine. The fax was signed by both Mr. Comstock and Ms. Floria, who were both at that time employed by Everest.

At the time, Alpine had a master account and several sub-accounts held with Haywood that were used to facilitate investments with Alpine's clients. Haywood relied on the fax and transferred the assets as instructed in the form of at least fifteen separate wire transfers in excess of $300,000. The assets were deposited into an account held by Everest and are now managed solely by Everest through Haywood. Haywood has enabled Everest to continue to trade securities in and out of its accounts, and has frozen the transferred assets "for an indefinite period of time." Alpine has no access to the Haywood Securities account in question and has completely lost the ability to manage the frozen transferred assets despite its ongoing contracts with its clients. Alpine's credibility as an international asset management firm has been stigmatized, and Alpine has incurred substantial and ongoing

4

costs and expenses in having to investigate these claims, re-establishing its standing in the international asset management business and with clients, and seeking legal counsel to advise and bring legal action to cure the damages caused by this misconduct.

Based on these factual allegations, Alpine asserts the following claims against Mr. Comstock: (Count I) tortious interference with contract, (II) tortious interference with prospective business relations and/or future commercial expectancy, (III) conversion, (IV) misappropriation of trade secrets, (V) breach of contract, (VI) unjust enrichment, (VII) breach of fiduciary duty, (VIII) breach of mandate under the Swiss Code of Obligations, (VIII [sic]) tortious wrong causing damage to another under the Swiss Code of Obligations, and (IX) unjust enrichment under the Swiss Code of Obligations.

Mr. Comstock now moves to dismiss Alpine's claims against him on two grounds.[3] First, he contends that the court lacks subject matter jurisdiction because jurisdiction is based on diversity and the claims in this case do not satisfy the $75,000 amount-in-controversy requirement.  Second, he argues that the court should dismiss for improper venue because the consulting agreement contained a Swiss forum selection clause and also because adjudicating the remaining claims in Kansas is equally improper under the *forum non conveniens* doctrine.

---

[3] Mr. Comstock also seeks dismissal of each separate claim on the basis that Alpine's complaint fails to state a claim upon which relief can be granted.  This aspect of the motion is denied as moot in light of the court's dismissal based on *forum non conveniens*.

**ANALYSIS**

For the reasons explained below, the court finds that it has subject matter jurisdiction over this case because Alpine has claimed an amount well in excess of the $75,000 jurisdictional threshold and Alpine has met its burden of showing that it is not legally certain that its claim is less than the jurisdictional amount. Consequently, the court will deny Mr. Comstock's motion to dismiss insofar as that motion is based on a lack of subject matter jurisdiction. The court will, however, exercise its discretion and grant the motion to dismiss based on the *forum non conveniens* doctrine because it is abundantly clear to the court that this lawsuit should be litigated in Switzerland, not Kansas.

**A.    Subject Matter Jurisdiction**

For purposes of determining the amount in controversy, the amount claimed by the plaintiff controls if the claim is apparently made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *Adams v. Reliance Std. Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000). When federal subject matter jurisdiction is challenged based on the amount-in-controversy requirement, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Adams*, 225 F.3d at 1183. The burden is on the party asserting jurisdiction (here, Alpine) to show it is not legally certain that the claim is less than the jurisdictional amount. *Id.* "There is a strong presumption favoring the amount alleged by the plaintiff." *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003). Consequently, where the plaintiff has alleged that the amount-in-controversy requirement is satisfied, dismissal is

6

generally warranted only where (1) a contract limits the possible recovery, (2) the law limits the amount recoverable, or (3) the plaintiff commits an obvious abuse of federal court jurisdiction. *Id.* at 1216-17.

In this case, Alpine's complaint seeks various forms of relief against Mr. Comstock. Its tortious interference, conversion, and misappropriation of trade secrets claims each seek $300,000 plus prejudgment interest, attorneys' fees and costs, and general, compensatory, special, nominal, and punitive damages. Its breach of contract claim is similar except that it seeks consequential damages. In Alpine's unjust enrichment claim, it seeks restitution, accounting, resulting or constructive trust, disgorgement, and reasonable costs, including attorneys' fees. Alpine's breach of fiduciary duty claim seeks relief similar to its tortious interference claims, plus forfeiture of Mr. Comstock's compensation for the period of his alleged faithlessness. The claims asserted under the Swiss Code of Obligations seek damages as allowed by Swiss law. Because these amounts claimed exceed $300,000, there is a strong presumption that the $75,000 amount-in-controversy requirement is satisfied.

Mr. Comstock nonetheless argues that Alpine's financial injury was the loss of the asset management fee and not the $300,000 in assets themselves. His rationale is that Alpine did not suffer a $300,000 injury by virtue of its clients' assets being transferred because Alpine did not own its clients' assets; instead, Alpine was deprived of nothing more than the asset management fee which, according to Mr. Comstock, is only approximately $3,000. In support of this argument, Mr. Comstock cites *Ongstad v. Piper Jaffray & Co.*, 407 F. Supp. 2d 1085 (D.N.D. 2006) (rejecting argument that management of assets with a total value of

more than $1 billion was sufficient to confer jurisdiction where "there [was] no inherent correlation between the total value of the assets and the amount of damages sustained").

In response, Alpine states that Mr. Comstock's reading of the complaint that this case is over nothing more than a $3,000 management fee is "misguided." Alpine points out the various types of damages sought in the complaint and, additionally, Alpine has submitted an affidavit from J. A. Michie, Chairman of Alpine, in which Mr. Michie estimates dollar amounts associated with the various types of relief sought. He states, for example, that Alpine is seeking disgorgement, restitution, and reimbursement in excess of $107,400, which includes Mr. Comstock's compensation and ownership interest in Alpine under the contract. Also, Alpine has already lost approximately $30,000 in asset management fees in connection with the Haywood Securities account. Alpine has paid more than $27,000 in attorneys' fees and currently owes in excess of $50,000. And, Alpine is seeking $400,000 in damages under the legal theories of tortious interference, conversion, breach of fiduciary duty, misappropriation of trade secrets, and breach of contract.

The court agrees with Alpine and finds that Mr. Comstock's argument concerning the $3,000 management fee rests on an overly narrow reading of Alpine's claims for relief. And, based on the various damage estimates submitted by Alpine, the court has no difficulty finding that Alpine has shown that it is not legally certain that its claims against Mr. Comstock are for less than the $75,000 jurisdictional amount. Nothing in the record leads the court to believe that Alpine claimed the $300,000 amounts in the complaint in bad faith.

Consequently, the amount-in-controversy requirement is satisfied here and Mr. Comstock's motion to dismiss on the basis of a lack of subject matter jurisdiction is denied.

**B.**   **Improper Venue**

The court turns, then, to the predominant focus of Mr. Comstock's motion.  Therein, he argues that venue is improper because (1) the consulting agreement mandated that the suit be brought in Switzerland, and (2) venue is inappropriate under the *forum non conveniens* doctrine.   According to Mr. Comstock, Alpine should have brought this lawsuit in Switzerland.   The court declines to closely scrutinize the forum selection clause in the consulting agreement in isolation because it finds that the entire matter is more readily amenable to resolution under the *forum non conveniens* doctrine in any event.  *See, e.g.*, *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 431 (10th Cir. 2006) (noting that the district court's construction of a choice-of-forum provision under Swiss law "may be mooted by a determination that venue is inappropriate under the *forum non conveniens* doctrine").  Consequently, the court will proceed directly to the *forum non conveniens* analysis.

"A *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *accord Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 992 (10th Cir. 1993).  The Supreme Court has explained the doctrine as follows:

> Under the federal doctrine of *forum non conveniens*, when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems,

> the court may, in the exercise of its discretion, dismiss the case, even if
> jurisdiction and proper venue are established.

*Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994); *accord Yavuz*, 465 F.3d at 426.

In the Tenth Circuit, the court must first answer "two threshold questions in the *forum non conveniens* determination: first, whether there is an adequate alternative forum in which the defendant is amenable to process, and second, whether foreign law applies." *Yavuz*, 465 F.3d at 426 (citing *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 605 (10th Cir. 1998)). If both of these questions are answered in the affirmative, the court proceeds to weigh the private and public interests bearing on the *forum non conveniens* decision. *Id.* The private interest factors are as follows:

> (1) the relative ease of access to sources of proof; (2) availability of
> compulsory process for compelling attendance of witnesses; (3) cost of
> obtaining attendance of willing non-party witnesses; (4) possibility of a view
> of the premises, if appropriate; and (5) all other practical problems that make
> trial of the case easy, expeditious and inexpensive.

*Id.* The public interest factors include the following:

> (1) administrative difficulties of courts with congested dockets which can be
> caused by cases not being filed at their place of origin; (2) the burden of jury
> duty on members of a community with no connection to the litigation; (3) the
> local interest in having localized controversies decided at home; and (4) the
> appropriateness of having diversity cases tried in a forum that is familiar with
> the governing law.

*Id.*

Normally there is a strong presumption in favor of hearing the case in the plaintiff's chosen forum that is overcome "'only when the private and public interest factors clearly point towards trial in the alternative forum.'" *Gschwind*, 161 F.3d at 606 (quoting *Piper*, 454

U.S. at 255).  A foreign plaintiff's choice of forum, however, warrants less deference.  *Id.* Consequently, when the plaintiff is foreign, the private and public interest factors need not so heavily favor the alternate forum.  *Id.* (citing *Piper Aircraft*, 454 U.S. at 256).

    *1.*    <u>*Adequate Alternative Forum Where Defendant is Amenable to Process*</u>

The first threshold question the court must answer is whether Switzerland is an adequate alternative forum where defendant is amenable to process. *Yavuz*, 465 F.3d at 426; *Gschwind*, 161 F.3d at 606.  The defendant bears the burden of proving that Switzerland is an adequate alternative forum. *Gschwind*, 161 F.3d at 606.  The defendant must prove that the alternative forum is both available and adequate.  *Id.*

As to whether Switzerland is an "available" forum, Mr. Comstock states that he would accept service of process.  *See* Def.'s Reply (doc. #53), at 9.  The court takes this representation to mean that Mr. Comstock voluntarily submits to suit in Switzerland and to accept service of process for any action instituted there.  The court therefore finds that Switzerland is an alternative forum that is available to Alpine.  *See Gschwind*, 161 F.3d at 606-07 (defendants' concession that they would be subject to suit in France was enough to make the alternative forum available).  Additionally, although Alpine has not submitted any evidence that would lead the court to believe that the courts of Switzerland would refuse jurisdiction over the subject matter of the parties' dispute, out of an abundance of caution the court will dismiss this action on the condition that it will deem Mr. Comstock to have consented to have this case reinstated in this court if the Swiss courts refuse jurisdiction.  *See id.* at 607 (approving a similar condition on dismissal).

Alpine nevertheless vigorously contends that Switzerland is not an "adequate" alternative forum.  In support of this argument, Alpine relies on an affidavit from Marcel Lustenberger, an attorney in Zurich, Switzerland.  Alpine contends that Mr. Lustenberger opines that claims arising after the contract ended would not be governed by Swiss law or the forum selection provision (discussed below).  The court has carefully reviewed Mr. Lustenberger's affidavit, however, and finds no such assertion.  Instead, he opines that tort claims that arose after the agreement was terminated are not governed by the Swiss choice-of-law and forum selection provisions.  This does not mean that they are not governed by Swiss law or amenable to the Swiss court's jurisdiction, but rather only that the relevant contract provisions do not dictate such a result.

Alpine also contends that Mr. Lustenberger opines that some of the claims for relief sought by plaintiff would be difficult to obtain in Switzerland, let alone ultimately enforce in the United States.  Specifically, Mr. Lustenberger's affidavit states in relevant part as follows:

> **III.   Would it be possible to obtain punitive damages against Defendant in court proceedings in Switzerland?**
>
> 18.   No, Swiss law does not allow the award of punitive damages.  Punitive damages awarded by foreign courts often are not enforceable in Switzerland since such punitive damages are considered to be violating Swiss public policy.
>
> **IV.   Would it be possible to enforce injunctive relief obtained in Switzerland against the Defendant in the USA?**
>
> 19.   The answer to that question depends on the applicable US rules on the enforcement of foreign judgments with which I am not familiar.  However it is my experience in many international cases that it is much faster to obtain and enforce injunctive relief at the domicile of a party.  If for example a request for injunctive relief would be filed against

12

> Defendant in Switzerland (and assuming the Swiss court would accept jurisdiction) it would take approximately three months just to serve such request through the appropriate diplomatic channels upon the Defendant in the US.

Alpine contends that it would be manifestly unjust to force Alpine to litigate this case in Switzerland, where it cannot obtain punitive damages and it would be difficult to obtain injunctive relief.  Alpine also points out that "Swiss courts strictly limit discovery due to strict privacy rules, which would severely prejudice this case if tried in Switzerland."  Pl.'s Resp. (doc. #45), at 18.

The concerns stated by Alpine are insufficient to establish that Switzerland is an inadequate alternative forum, at least in the sense with which the *forum non conveniens* doctrine is concerned.  "An adequate forum need not be a perfect forum."  *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001).  Indeed, the Supreme Court has noted that a remedy is deemed inadequate for purposes of the *forum non conveniens* inquiry when it amounts to "no remedy at all."  *Piper Aircraft*, 454 U.S. at 265.  Consequently, the Courts of Appeal have generally deemed an alternative forum "adequate" as long as the parties will not be deprived of all remedies or treated unfairly.  *See In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 957 (7th Cir. 2007); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003) (noting this rule applies "even though they may not enjoy the same benefits as they might receive in an American court" (quotation omitted)); *see also* 14D Charles Alan Wright et al., Federal Practice & Procedure § 3823.3, at 677 (3d ed. 2007) (recognizing that "according to a number of decisions, the alternative forum is

adequate as long as the plaintiff will not be deprived of all remedies or subjected to unfair treatment"). The adequate alternative forum requirement is not met only in rare circumstances where the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it amounts to no remedy at all. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). Consequently, the availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum nor on identical remedies. *See In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d at 957-58 (observing that *"Piper Aircraft* establishes that the foreign law need not be identical to U.S. law, or even as favorable to plaintiffs as U.S. law may be"); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 158 (2d Cir. 2005); *see also DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007) ("'Adequacy' does not require that the alternative forum provide the same relief as an American court.").

In this case, Alpine's suggestion that Switzerland would not be an adequate alternative forum is belied by the claims set forth in Alpine's own complaint. Therein, Alpine asserts claims for breach of mandate, tortious wrong causing damage to another, and unjust enrichment under the Swiss Code of Obligations. Under these claims, Alpine seeks damages as allowed by Swiss law and restitution for unjust enrichment. Apparently, then, Alpine believes that it would be entitled to some form and/or degree of relief in the courts of Switzerland. Because Alpine will not be deprived of all meaningful remedies, the court is not concerned with the fact that the substantive law, associated remedies, and availability of discovery might be somewhat different than what would be available under United States

14

law.  *See Piper Aicraft*, 454 U.S. at 247 ("The possibility of a change in substantive law ordinarily should not be given conclusive or even substantial weight in the *forum non conveniens* inquiry."); *DTEX, LLC*, 508 F.3d at 796 (foreign forum can be adequate even though the parties may not enjoy all the benefits of an American court).

The court also notes that other cases have found that the Swiss courts provide an adequate alternative forum for contract and tort claims.  *See, e.g.*, *Dickson Marine, Inc. v. Panalpina*, 179 F.3d 331, 342 (5th Cir. 1999) (finding Switzerland was an adequate alternative forum that "does recognize causes of action for both contract and tort"); *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 222-23 (S.D.N.Y. 2007) (courts of Switzerland were adequate even where Swiss tort law would not provide precisely the same causes of action); *Do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 304 (S.D.N.Y. 2007) (Switzerland was adequate alternative forum).  Additionally, the fact that the alternative forum does not permit punitive damages generally does not render it inadequate.  *See de Melo v. Lederle Labs.*, 801 F.2d 1058, 1061 (8th Cir. 1986) (holding Brazil was adequate alternative forum despite unavailability of punitive damages under Brazilian law); *Dtex, LLC v. BBVA Bancomer, S.A.*, 512 F. Supp. 2d 1012, 1022-23 (S.D. Tex. 2007) (same, no recovery permitted for punitive damages in Mexico courts under Mexican law); *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F. Supp. 2d 925, 928-29 (N.D. Ill. 1999) (same, in German courts).  And, "[t]he case law is clear that an alternative forum ordinarily is not considered 'inadequate' merely because its courts afford different or less generous discovery procedures than are available under American rules."  *Mercier v.*

15

*Sheraon Int'l, Inc.*, 981 F.2d 1345, 1352-53 (1st Cir. 1992) (collecting cases); *see, e.g.*, *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) (Argentina was adequate alternative forum despite plaintiffs' concerns about, among other things, the lack of discovery there); *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1200-01 (C.D. Cal. 2004) (same, as to courts in Taiwan despite the absence of pretrial discovery there); *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 542 (S.D.N.Y. 2001) (same, as to courts in Equador despite tighter restrictions on discovery); *Hull 753 Corp.*, 58 F. Supp. 2d at 928-29 (same, as to German courts that "allow little, if any, discovery"). Based on these considerations, then, the court is satisfied that Switzerland is an adequate alternative forum where Alpine could bring this lawsuit and Mr. Comstock would be amenable to service of process.

## 2.   *Application of Foreign Law*

Mr. Comstock argues that Swiss law applies to Alpine's claims against him. In support of this argument, he points out that the consulting agreement contains a Swiss choice-of-law clause. This provision states as follows: "This Agreement shall exclusively be governed by Swiss law." The consulting agreement also contains a Swiss forum selection clause that states as follows: "The ordinary courts at the domicile of the Company [Switzerland] shall have exclusive jurisdiction."

In response, Alpine has submitted an affidavit from Mr. Lustenberger concerning the application of Swiss law. Mr. Lustenberger states, briefly summarized, that any tort claims that arose after termination of the consulting agreement (for example, claims arising from the

16

alleged fax from Mr. Comstock to Haywood) would not be governed by the Swiss choice-of-law and forum selection clauses. Here, the court will not delve into the thorny issue of determining the scope and meaning of the Swiss choice-of-law provision under Swiss law. This is because, importantly, Mr. Lustenberger does not even purport to deny that the breach of contract claim (Count V) would be governed by Swiss law and, more obviously, neither Mr. Lustenberger's affidavit nor Alpine's response to Mr. Comstock's motion addresses how choice-of-law principles would determine the law that applies even in the absence of the contractual choice-of-law provision.

Again, the choice-of-law provision states that "[t]his Agreement shall exclusively be governed by Swiss law." From this, it seems that, at a bare minimum, Alpine's breach of contract claim is governed by Swiss law. Then, of course, the three claims brought under the Swiss Code of Obligations (Counts VIII, VIII [sic], and IX) are governed by Swiss law. Furthermore, the applicable choice-of-law rules would largely call for the application of Swiss law on Alpine's other claims. The court must apply Kansas choice-of-law rules to determine what law governs a particular claim. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding a federal court sitting in diversity must apply the forum state's choice-of-law rules). In Kansas, tort actions are governed by the law of the state in which the tort occurred, that is, the state in which the wrong was felt. *Ling v. Jan's Liquors*, 237 Kan. 629, 634-35, 703 P.2d 731, 735 (1985). Because the wrong here involves financial harm, the court would look to the law of the place where Alpine felt the alleged financial harm, which is the location of its principal place of business in Switzerland. *See First State*

*Bank v. Daniel & Assoc., P.C.*, Case No. 05-2505-JWL, 2006 WL 2919057, at *1 (D. Kan. Oct. 11, 2006).   Accordingly, Swiss law would govern Alpine's claims for tortious interference, *see ORI, Inc. v. Lanewala*, 147 F. Supp. 2d 1069, 1078 n.9 (D. Kan. 2001), misappropriation of trade secrets, *see Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 147 F. Supp. 2d 1057, 1065 n.4 (D. Kan. 2001), and breach of fiduciary duty, *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 690-91 (D. Kan. 2007).

The court will not conduct a more determinative choice-of-law analysis on Alpine's remaining claims for conversion and unjust enrichment because the parties have not briefed this particular issue.   Suffice it to say, however, that it is clear to the court that the choice-of-law provision in the consulting agreement will call for the application of Swiss law to at least one and perhaps more of Alpine's claims in this case.   And, even if the scope of that contractual choice-of-law provision does not include Alpine's other claims in this case, it is readily apparent that most, and perhaps all, of Alpine's other claims will be governed by Swiss law either under their plain terms (as in the case of the claims asserted under the Swiss Code of Obligations) or under governing Kansas choice-of-law principles.   In sum, the claims in this case will overwhelmingly be governed by Swiss law.   Consequently, the second threshold determination in the *forum non conveniens* determination – the application of foreign law – is met here and the court must proceed to weigh the public and private interest factors.

   *3.*  <u>*Private Interest Factors*</u>

     **a.**  **Relative Ease of Access to Sources of Proof**

The first private interest factor, relative ease of access to sources of proof, weighs heavily in favor of dismissal.  There is not a single anticipated witness, other than Mr. Comstock himself, who lives or works in Kansas.  Specifically, Livia Floria lives and works in Switzerland.  According to Mr. Comstock, Ms. Floria is the most crucial witness because Alpine alleges that she and Mr. Comstock co-signed the facsimile to Haywood, and Mr. Comstock has repeatedly denied preparing, signing, and transmitting the facsimile.  Two other witnesses named in the complaint are Erwin Speckert and Sylvia Hannes.  Again, both of these individuals live and work in Switzerland.  The two other alleged co-conspirators, Tony Moore and Herbert Towning, live and work in the United Kingdom.  Certainly, traveling from Switzerland to the United Kingdom would be much easier than traveling from Kansas to the United Kingdom.  The additional ten individuals whom the parties have identified as likely to have discoverable information as well as their respective locations are as follows: Tom Merrick, Switzerland; Jorge Kluchnik, Liechtenstein[4]; J.A. Michie, Switzerland or Canada; Chris Deegan, United Kingdom; Elizabeth Schoenenberger, United Kingdom; Austin Cooley, Colorado; Jim Longshore, Canada; Mark McGinnis, Canada; and Bruce Thompson and Dana Prince, whose identity is unknown to Mr. Comstock.  Based on this information, it appears that litigating this case in Switzerland would provide greater ease of access to witnesses, the vast majority of whom are located in and around Switzerland.  The only meaningful exception appears to be Mr. Comstock himself, and the court views his

---

[4] Liechtenstein is a small European country which borders Switzerland.

motion to dismiss based on *forum non conveniens* grounds to mean that he will gladly travel to Switzerland for purposes of defending this lawsuit. The only other exceptions are the few witnesses located in Canada and Colorado, and Alpine does not suggest that any of them are key witnesses.

Also according to Mr. Comstock, this case will involve (among other things) a battle over damages because Alpine claims a $300,000 injury while Mr. Comstock believes that the injury is more like $3,000. Mr. Comstock states that disproving Alpine's damages will require examination of its books and other financial data, which are located in Switzerland and, furthermore, that the financial data and other documents will likely be written in German, not English. Consequently, conducting this discovery from Kansas will be difficult and expensive. The court is unpersuaded by Alpine's suggestion that Mr. Comstock was required to provide an "expert analysis how the issue of translating German language documents into English would disappear if this matter were litigated in Switzerland or whether any material documents need translation." The implication of the fact that allegedly critical financial documents will be in German is obvious: they will have to be translated for counsel and, ultimately, for the court and the jury. Comparatively, this translation would likely be unnecessary if this case were litigated in Switzerland because German is the most commonly spoken language in Switzerland. Thus, Mr. Comstock could simply retain Swiss counsel and litigate the case there. This would largely, if not entirely, obviate the need for any such translation.

Mr. Comstock also points out that various documentary evidence is located in Switzerland. This includes the documents yielded by the laptop computer that he returned to Alpine when he resigned. Additionally, electronically stored information is located on Alpine's email server, which is located in Switzerland. On the other hand, Alpine will undoubtedly be seeking to obtain documents from Mr. Comstock located in Kansas. On balance, the court believes that these types of considerations are not particularly significant because documents can easily be produced anywhere by a party. The considerations above regarding the location of witnesses and German financial documents are much more significant because witnesses tend to be deposed where they reside and because of the obvious obstacles raised by the need for translating the financial documents.

### b.      Availability of Compulsory Process for Unwilling Witnesses

The second private interest factor, the availability of compulsory process for the attendance of unwilling witnesses, weighs heavily in favor of dismissal. Mr. Comstock has submitted an affidavit in which he states that he believes that the testimony of Mr. Speckert (Switzerland), Ms. Hannes (Switzerland), Ms. Floria (Switzerland), Mr. Moore (UK), Mr. Towning (UK), Mr. Gibson (Canada), and Mr. Merrick (Switzerland) will be vital to his case and that these individuals would be unwilling to testify on his behalf in Kansas simply because of the expense of doing so. Alpine's response is that this factor does not weigh in favor of either party because Switzerland courts cannot, without extensive additional

litigation, compel witnesses in the United States, Canada, England, or Germany.[5]  Alpine points out that United States courts can likewise issue Letters Rogatory to obtain discovery. On balance, however, it is apparent that litigating this case in Switzerland would significantly reduce the difficulties associated with compulsory process.  Compulsory process would not be readily available here for **any** witness.  By comparison, if this case were litigated in Switzerland compulsory process would be available for the several witnesses located within Switzerland, and the closer proximity to the United Kingdom may perhaps make Messrs. Moore and Towning more willing witnesses, thus obviating the need for compelling their testimony.

### c.    Cost of Securing Attendance of Willing Witnesses

The expense and absence of any Kansas witness other than defendant Comstock contributes to finding that this factor weighs in favor of dismissal.  On the one hand, Mr. Comstock argues that the cost of securing attendance of witnesses – every one of whom that is referenced in Alpine's complaint lives or works outside the United States – would be "astronomical."   Alpine, on the other hand, argues that it will be cheaper to attend depositions and trial in the United States than in Switzerland because the dollar is significantly devalued in comparison to the Swiss franc and Euro.  The court need not conduct an in-depth economic analysis on this point to see that only one witness lives in Kansas as compared to five witnesses in Switzerland.  What is apparent is that no matter

---

[5] Of course, the parties' papers do not reveal the existence of any witness in Germany.

which forum is selected, the case will be expensive to litigate.  But, it would probably be less expensive, albeit perhaps only slightly so, to secure the attendance of willing witnesses in Switzerland because more of them are located there.

### d.   Ability to View the Premises, if Appropriate

The next private interest factor is the ability to view the premises.  Alpine says that it intends to inspect the home office and computer of Mr. Comstock which is located in Kansas.  This argument, however, is really more akin to seeking documents and, as discussed above, the availability of documentary evidence seems unlikely to play an important role in determining the relative convenience to the parties, and it is given scant weight.

### e.   Other Practical Factors That Make Trial Easy, Expeditious, and Economical

The final private interest factor is all other practical problems that make trial of the case easy, expeditious and inexpensive.  Alpine states that Swiss courts cannot directly enforce a judgment in the United States against a United States defendant without having to first domesticate the judgment in a competent court in the United States.  But, if this case were to remain in Kansas, no such additional domestication action would be required.  This is a legitimate concern and this consideration weighs in favor of retaining the case here. Even so, it appears to the court that the inconvenience this will cause to Alpine is only a slight one.  The prevailing common law view is that judgments of foreign countries are entitled to recognition and enforcement largely to the same extent as sister-state judgments. *See generally* Restatement of the Law (Third) of the Foreign Relations Law of the United

States § 481, at 594-604 (1987). Consequently, any judgment obtained in a court of Switzerland ought to be fairly easy to enforce here.

Alpine also points out that "Swiss courts strictly limit discovery due to strict privacy rules, which would severely prejudice this case if tried in Switzerland." Pl.'s Response (doc. #45), at 18. The court is not persuaded that this is a legitimate concern about the relative convenience of proceeding here as compared to in Switzerland. Alpine agreed that its consulting agreement with Mr. Comstock would be governed by Swiss law and it has brought claims against him that will largely, and possibly entirely, be governed by Swiss law. Despite Alpine's apparent attempt to have its relationship with Mr. Comstock governed by Swiss law, it is ironic that Alpine is now seeking to avoid the application of Swiss privacy laws. Indeed, given the vigor with which Alpine opposes pursuing this litigation in Switzerland, its home country, the court credits Mr. Comstock's belief that Alpine is using this lawsuit to marshal evidence against Everest, for whom Comstock presently works. Mr. Comstock explains that Mr. Michie has a personal grudge against Mr. Speckert, the founder of Everest, and Alpine has already threatened legal action against Everest. Thus, Alpine filed suit in Kansas precisely because it wishes to avoid Swiss secrecy laws by trying to accomplish what it would not be able to do in Switzerland: review Everest's financial and proprietary information. This might be permissible if litigating the case here were at all convenient for everyone else involved. But, Alpine's ability to benefit from American discovery rules is not the type of "convenience" with which the *forum non conveniens* doctrine is concerned. The court has already taken this into consideration in evaluating

24

whether Switzerland is an adequate alternative forum.  *See, e.g.*, *Aero Sys. Eng'g, Inc. v. Opron, Inc.*, 21 F. Supp. 2d 990, 1001 n.3 (D. Minn. 1998) ("Differences in discovery . . . goes to the issue of the adequacy of the alternative forum, and not to its convenience.").

> 4. *Public Interest Factors*

> a.  **Administrative Difficulties of Courts**

The first public interest factor is administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin.  Alpine suggests that Swiss and American courts are equally congested, but points out that a separate domestication of a judgment would add to the United States dockets.  Given the scant argument on this point, the court is not persuaded that considerations of court congestion weigh in favor of either party.  What is far more significant to the court is that the public interest in minimizing administrative difficulties weighs in favor of dismissal in favor of a Switzerland forum.  This is partly in light of the difficulties of a number of key witnesses being located in Switzerland.  More predominantly, though, the likely application of Swiss law to Alpine's claims weighs significantly in favor of dismissal.  The determination of foreign law, governed by Fed. R. Civ. P. 44.1, will undoubtedly require the parties to retain experts to submit competing evidence on the meaning of Swiss law at every procedural juncture of this litigation.  This is an unproductive and an unnecessary use of the parties' and the court's time and resources.

> b.  **Burden of Jury Duty on Members of a Community With No Connection to the Litigation**

25

The next public interest factor, the burden of jury duty on members of a community with no connection to the litigation, also weighs in favor of dismissal.  As noted below, Switzerland has a far greater interest in this case than Kansas.  This case has no connection to Kansas.  Alpine believes that the burden on jurors is not implicated because it did not request a jury trial and no jury trial exists under Swiss law.  Mr. Comstock, on the other hand, states that he intends to demand a jury trial if the case remains here.  Jury duty should not be imposed on the citizens of Kansas in a case that has such a tenuous connection with this state, particularly when the only connection is the fact that the defendant is a Kansas resident who lives here, and he does not even want to litigate the case here.

### c.       Local Interest in Having Localized Controversies Decided at Home

The third public interest factor, the local interest in having localized controversies decided at home, also supports dismissal in favor of a court in Switzerland.  The alleged financial harm was felt in Switzerland.  Consequently, Swiss courts have a greater interest than an American court in deciding the appropriate legal implications for Mr. Comstock's actions.  Other than the fact that Mr. Comstock lived in Kansas and performed work under the consulting agreement here, the facts of this case have no connection with Kansas. Kansans, on balance, undoubtedly have little if any interest in deciding claims under Swiss law brought by a Swiss corporation that was injured in Switzerland.

### d.       Forum that is Familiar with the Governing Law

The final public interest factor is the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.  Again, this case will be overwhelmingly,

26

and possibly entirely, governed by Swiss law.  The courts of Switzerland, not this court, are familiar with the governing law.  Accordingly, this factor weighs heavily in favor of transfer.

5.    *Conclusion*

Switzerland is an adequate and available forum for this case.  After careful consideration of the matter, the court believes that in light of Alpine's status as a foreign corporation the private and public interest factors strongly support dismissal of this case under *forum non conveniens* in favor of litigating this case in Switzerland.  By filing this lawsuit in Kansas, Alpine has disregarded the Swiss choice-of-law and forum selection clause contained in the consulting agreement with respect to at least a portion of its claims against Mr. Comstock.  And, it appears that Alpine's reason for doing so is because it believes it would be in its interest to do so in order to seek punitive damages, equitable relief, and broader discovery.  In order that Alpine can obtain these litigation benefits, Alpine wants to put Mr. Comstock and his counsel to the expense and inconvenience of trying to depose non-parties located around the world and defending this case based on financial documents written in German.  The court believes that this litigation strategy will inconvenience numerous non-party witnesses with more cumbersome travel arrangements, and potentially burden the various court systems unnecessarily with additional litigation to compel their attendance.  And, moreover, continuing to litigate this case here will unnecessarily saddle the court with the burdensome task of determining and applying Swiss law in a case that is of little concern to the citizens of this state.  In sum, Mr. Comstock has satisfied the court that continuing to litigate the case here would amount to oppressiveness and vexation to him out

27

of all proportion to any slight legitimate convenience to Alpine such that continuing to litigate the case here would be wholly inappropriate.  Accordingly, the court will exercise its discretion and dismiss this case based on *forum non conveniens* grounds.


**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Andrew Comstock's Motion to Dismiss (doc. #10) is denied insofar as defendant Comstock seeks dismissal based on a lack of subject matter jurisdiction; it is granted insofar as he seeks dismissal for improper venue, subject to reinstatement if the Swiss courts refuse jurisdiction; and it is otherwise denied as moot.


**IT IS FURTHER ORDERED** that the Application for Hearing on Defendant Andrew Comstock's Motion to Dismiss (doc. #54) is denied.


**IT IS SO ORDERED** this 12th day of May, 2008.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge